Andrew Deiss (USB 7184)
Wesley Felix (USB 6539)
**DEISS LAW PC**
10 West 100 South, Suite 425
Salt Lake City, Utah 84101
(801) 433-0226
adeiss@deisslaw.com
wfelix@deisslaw.com

*Attorneys for Plaintiff Tara Gagliardi*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| Tara Gagliardi,                                   ) | **COMPLAINT AND DEMAND** |
| ) | **FOR JURY TRIAL IN** |
| Plaintiff,                       ) | **ADMIRALTY OR MARITIME** |
| ) | **JURISDICTION FOR** |
| ) | **NEGLIGENCE UNDER THE** |
| vs.                               ) | **GENERAL MARITIME LAW OF** |
| ) | **THE UNITED STATES,** |
| United States of America,                  ) | **33 U.S.C. 1333(1)** |
| ) | |
| Defendant.                     ) | Case No. 2:18-cv-00588-PMW |
| _____     ) | |
| ) | Judge Paul M. Warner |
| ) | |

Plaintiff Tara Gagliardi, by and through her attorneys, and complain against
Defendant United States of America as follows:

### I.

### GENERAL ALLEGATIONS

### JURISDICTION

1.      Subject matter jurisdiction in this case is based on admiralty or maritime
jurisdiction under 28 U.S.C. § 1333(1).

2.       Defendant United States of America has waived sovereign immunity by the
Suits in Admiralty Act, 46 U.S.C. § 30901, *et. seq*. Defendant United States of America
("USA").

## PARTIES

3.      Plaintiff Tara Gagliardi ("Gagliardi") (hereinafter "Plaintiff"), is a citizen and resident of Maricopa County, in the State of Arizona.

4.      Gagliardi is the natural and custodial mother of the minor children D.D. and G.D.

5.      The USA by and through the National Park Service (NPS) and the United States Coast Guard (USCG), and other governmental entities, maintains and/or, operates and/or, controls and/or, monitors and/or, patrols and/or, oversees and/or regulates and/or administers the waters and marinas of Lake Powell and the Glen Canyon National Recreation Area (GCNRA), in conjunction with the State of Utah, other state and local governmental entities and certain private entities, including without limitation the aids to navigation (ATON or ATONS) in Lake Powell.   In particular the USA and others placed and maintained ATONS throughout Lake Powell, and more particularly, the area in and around the main river channel of the Colorado River at or near the intersection of the main river channel and the waters of Halls Crossing, Utah; Bullfrog Bay, Utah; and, Bullfrog Marina.

## VENUE

6.      Venue is proper in this district under 46 U.S.C. § 30906 because Plaintiff is a citizen of the United States and all at times relevant was a resident of Maricopa County, Arizona and the District of Arizona.

## BACKGROUND FACTS

7.      D.D. and G.D. were injured in a tragic boat grounding on Lake Powell in Bullfrog Bay, Utah on July 24, 2016 ("Accident").

8.      The Accident occurred at dusk when the outdrive of the boat hit an unmarked submerged rocky shoal ("Shoal") that was located near the main channel, and slightly over 1000 feet off the eastern shore of Bull Frog Bay, adjacent to a land formation commonly

known as Haystack Rock and through the Halls Crossing intersection.

9.      The Accident occurred while D.D. and G.D. were passengers in a rented 21-foot Cobalt runabout ("Vessel").

10.     At the time of the Accident, the Vessel was operated by D.D. and G.D.'s father, Jeffrey Darland ("Jeff Darland").

11.     Both Halls Crossing and Bullfrog Bay are maintained and operated by Aramark Corporation, Aramark Management Services Limited Partnership, Aramark Leisure Services, Inc., and/or their affiliates (herein referred to collectively as "Aramark").

12.     The Accident took place near the normal route of the public commercial car ferry that travels between Halls Crossing and Bullfrog Bay. The ferry is a USCG inspected commercial vessel that forms part of Utah State Highway 276.

13.     At the time of the Accident, the Cobalt 21 struck the submerged rocky shoal and D.D. and G.D. were ejected from the bow of the Vessel.

14.     The momentum of the Cobalt 21 carried the Vessel over D.D. and his arm and leg were amputated by the Vessel's propeller.

15.     Prior to the Accident, D.D., G.D. and their natural father, Jeff Darland, paid for admission to GCNRA where Lake Powell is located.

16.     The waters in, around and between Halls Crossing and Bullfrog Bay are Navigationally Critical Waterways because, among other reasons, degradation of the ATONS would result in an unacceptable risk of a marine accident due to the physical characteristics of the waterway and difficult navigational conditions.

17.     At the time of the Accident, Jeff Darland was driving the Vessel to Bullfrog Marina where he had rented a dock space for the Vessel and a hotel room at Bullfrog Marina for D.D., other passengers and himself for the night of July 24, 2016.

18.     The Shoal where the Accident occurred was not marked, which was and is a hazard to navigation.

19.     No warning whatsoever of the hazard was published to Jeff Darland or the public by the State or any others charged with the responsibility of providing a safe waterway in or about Bullfrog Bay.

20.     The State, by agreement, has joint and several responsibilities for boating safety and safe navigation with the U.S. National Park Service, the U.S. Coast Guard or local agencies over the Bullfrog Bay area where the Accident occurred.

21.     Kane County also has joint and several responsibility to patrol Lake Powell and report any and all hazards, obstructions or navigational dangers that they discover to ensure that the State and related federal agencies can discharge their duties properly.

22.     Pursuant to a Memorandum Of Understanding/Agreement Between The United States Coast Guard And The National Park Service ,Glen Canyon National Recreation Area And Lake Mead National Recreation Area Regarding Aids To Navigation Cooperation Agreement, effective February 23, 2015, ("MOU") and a Memorandum Of Agreement Between The United States Coast Guard And The National Park Service Regarding Recreational Boating And Passenger Vessel Safety In The Lake Mead National Recreation Area, Glen Canyon National Recreational Area And Grand Canyon National Park, ("MOA"), the USCG and the NPS agreed in the interest of public boater and vessel safety, among others things, to share the responsibility for the establishment, operation and maintenance of a system of ATONS conforming to established standards on Lake Powell, to warn and educate the public of navigational hazards in Lake Powell, and to prevent the use of vessels that were inadequately equipped to safely navigate on Lake Powell.

23.     Attached hereto as **Exhibit 1** and **Exhibit 2**, respectively, and incorporated herein by this reference, are true and correct copies of the MOU and MOA, obtained through the Freedom of Information Act from the USA.

24.     Pursuant to GCNRA and Rainbow Bridge National Monument, Standard Operating Procedure Number 500-004, effective July 1, 2012, (NPS SOP), NPS set out its

mandatory rules for NPS employees to follow for the establishment, operation and maintenance of ATONS on Lake Powell.

25.     The purpose of the NPS SOP rules is to maintain public boater and vessel safety.

26.     Attached hereto as **Exhibit 3,** and incorporated herein by this reference, is a true and correct copy of the NPS SOP, obtained through the Freedom of Information Act from the USA.

27.     Pursuant to the NPS Management Policies Manual 2006, (NPS Manual) Section 9.2.5, which was in effect at the time of the Accident:

> Necessary aircraft and water navigation aids will be planned in collaboration with the Federal Aviation Administration and U.S. Coast Guard, respectively, and will be installed, maintained, and used in conformance with the standards established by these agencies . . .

28.     The purpose of Section 9.2.5 is to maintain public boater and vessel safety.

29.     Per the NPS Manual, adherences to the policies in the NPS Manual are mandatory.

30.     Attached hereto as **Exhibit 4,** and incorporated herein by this reference, is a true and correct copy of certain relevant excerpts from the NPS Manual, obtained through the Freedom of Information Act from the USA.

31.     Pursuant to the NPS SOP, the MOU, the MOA, and the NPS Manual, at all times relevant, the USCG and NPS were required to provide necessary ATONS.

32.     The USCG and NPS were required to, and did, operationally perform waterways assessments, install, maintain and use ATONS in Lake Powell and patrolled the river and used other means of data collection to identify navigational hazards that needed to be marked for the safety persons and vessels operating on Lake Powell.

33.     At all times relevant, USCG and NPS understood that the boating public and

persons, like Jeff Darland, relied upon the ATON system in Lake Powell and/or written and/or oral warnings from NPS and the USCG to notify them of latent unsafe conditions in the waters of Lake Powell.

34.    USCG and NPS patrolled Lake Powell and Bullfrog Bay and the waters at the intersection of the main channel of the Colorado River and Bullfrog Bay and marked the area with ATONs that were reasonably relied upon by the general public, including Jeff Darland, for safe boating.

35.    USCG and NPS provided written hazard warnings to the boating public on its website, on the bill boards of the GCNRA and in handouts when the boating pubic entered GCNRA.

36.    All of the items in Paragraph 33 were reasonably relied upon by the boating public, including Jeff Darland.

37.    At all times relevant before the Accident, Defendant knew that the rocky shoal at the Accident site existed.

38.    At all times relevant before the Accident, Defendant knew that the rocky shoal was a hazard to navigation.

39.    At all times relevant before the Accident, Defendant knew that there had been prior grounding accidents at the Accident site, at or near the rocky shoal.

40.    Plaintiff is informed and believes that Aramark, by contract with the NPS or other government agency, agreed to maintain and manage Bullfrog Marina and use due care to provide for the safety of persons using said marina and the approaches to Bullfrog Marina, including without limitation, safe ingress and egress to Bullfrog Marina from the intersection of the waters of Halls Crossing and Bullfrog Bay.

## II.

### FIRST CLAIM FOR RELIEF

### (GENERAL NEGLIGENCE, LOSS OF CONSORTIUM AND OTHER WRONGFUL CONDUCT AGAINST DEFENDANT USA)

41.    Plaintiff incorporates each and every allegation contained in paragraphs 1 through 40, as though fully set forth herein.

42.    Defendant United States committed operational negligence that was a substantial factor in causing the Accident.   In particular, Defendant's negligence included, but was not limited to:

A.    Failing to comply with the NPS SOP and/or the NPS Manual, and/or the MOU and/or the MOA;

B.    Failing to establish and maintain ATONS that conform to the U.S. Aids to Navigation System of Buoyage, 33 C.F.R. 62 as required in paragraphs 4-42 of the   USCG/NPS MOU;

C.    Failing to establish and maintain ATONS that comply with the requirements of USCG Rules and Regulations with respect to, including without limitation, Aids to Navigation - Administration, COMDTINST M16500.7A;

D.    Having decided to place ATONS in the intersection of the main river channel and Bullfrog Bay as well as Bullfrog Bay as a whole, Defendant failed to use reasonable care to avoid injury to D.D. by placing the ATONS in a fashion that created a trap for the ignorant or unwary boater, including without limitation, Red Buoy 94, Green Buoy 95 and Red Buoy BF 2 which directed Jeff Darland to pass Buoy 94 on his port side, Buoy 95 to his starboard side and head to BF 2 directly over the Accident site;

E.    Failing to establish and maintain ATONS at Lake Powell in conformance with 33 C.F.R. 62.2 ( c), and 33 C.F.R. 62.45(d)(2), and in particular, Buoy 94, should

have been a junction buoy or bifurcation buoy that was red with a top band of green that directed Jeff Darland to pass Buoy 94 to his starboard and then turn up into Bullfrog Bay;

F.    Failing to use reasonable care when patrolling Lake Powell to identify the navigational hazard created by the known falling water level and the known rocky shoal at the Accident site on or before July 24, 2016, and advise Jeff Darland of the rocky shoal hazard at the Accident site;

G.    Failing to use reasonable care to post navigational hazard markers on the rocky shoal at the Accident site;

H.    Failing to use reasonable care to warn Jeff Darland that at the water level on July 24, 2016, that the rocky shoal existed and constituted a hazardous submerged obstruction to the Vessel;

I.    Failing to use reasonable care to place and maintain a hazard marker or other ATON that guided Jeff Darland away from the rocky shoal where the Accident occurred;

J.    Failing to use reasonable care in the publication of written information or information on Defendant's website that was provided to Jeff Darland to warn him of the rocky shoal where the Accident occurred;

K.    Failing to use reasonable care when conducting the waterways assessment of the Accident site including without limitation, the intersection of the main river channel, Halls Crossing and Bullfrog Bay as well as Bullfrog Bay as a whole;

L.    Failing to use reasonable care to follow previously adopted safety policies with respect to establishing ATONS and marking navigational hazards at Lake Powell with ATONS;

M.    Failing to use reasonable care to establish and maintain ATONS advising of a navigational hazard at the Accident site when Defendants had notice of prior

groundings or near misses at the Accident site;

N.   Failing to comply with the NPS SOP, the NPS Manual, the USCG/NPS MOU and/or Aids to Navigation - Administration, COMDTINST M16500.7A, by failing to mark hazards such as rocks, shoals or reefs in high traffic areas in or around the marked channel, such as the Accident site, because there was an extremely high incident of collision;

O.   Failing to comply with NPS SOP, the NPS Manual, the USCG/NPS MOU and/or Aids to Navigation - Administration, COMDTINST M16500.7A by failing to maintain and place navigational aids in or around the marked channel where necessary as required in the NPS SOP and NPS Manual to prevent shortcutting of the buoy system that would result in immediate danger to life or property;

P.   Failing to mark navigational hazards within a marked channel as required in the NPS SOP, the NPS Manual, the USCG/NPS MOU and/or Aids to Navigation - Administration, COMDTINST M16500.7A;

Q.   Failing to place aids to navigation in a pattern consistent with the Code of Federal regulations and Aids to Navigation - Administration, COMDTINST M16500.7A;

R.   Failing to use reasonable care in the publishing and/or use of U.S. Geological Survey Map of Halls Crossing, Utah, Provisional Edition 1987 Map 37110-D-TF-024 that shows a ferry crossing and safe channel over the Accident site;

S.   Failing to place aids to navigation in a manner that did not mislead and guide Jeff Darland to drive the Vessel into a collision with the rocky shoal at the Accident site;

T.   Failure by the USCG to use reasonable care to educate and train NPS personnel to conduct a proper waterways assessment of the intersection of the main river channel and Bullfrog Bay as well as Bullfrog Bay as a whole;

U.      After the USCG undertook the duty to educate, train and supervise NPS personnel to conduct a proper waterways assessment of the intersection of the main river channel and Bullfrog Bay as well as Bullfrog Bay as a whole, the USCG failed to use reasonable care to oversee and supervise those responsible for placing and maintaining aids to navigation at the intersection of the main river channel and Bullfrog Bay as well as Bullfrog Bay as a whole;

V.      Failing to use reasonable care to provide proper navigation charts and Notices to Mariners and/or other warnings to Jeff Darland;

W.      Failing to use reasonable care to insure that those persons who rented vessels for use on Lake Powell, equipped those vessels with navigational charts and equipment sufficient to safely navigate Lake Powell;

X.      Failing to use reasonable care to warn in a manner reasonably calculated to provide notice to mariners on Lake Powell of the rocky shoal hazards at the intersection between the main river channel, Halls Crossing and Bullfrog Bay resulting from a rapidly dropping water level;

Y.      Failure to use reasonable care to inspect the ATONS in place in or about the intersection of the main river channel and Bullfrog Bay as well as Bullfrog Bay to insure they were properly placed;

Z.      Failure by the USCG to do its mandatory duties under the USCG/NPS MOU, including without limitation, failing to oversee the proper placing and maintaining of ATONS by the NPS and others on Lake Powell;

AA.    Failing to use reasonable care to place and maintain ATONS in a manner that created a safe channel for boaters at the intersection of the main river channel and Bullfrog Bay and Bullfrog Bay as a whole based upon the lake level at the time of the Accident; and

BB.    Failing to use reasonable care to place aids to navigation in accordance with the

IALA-B lateral system of anchorage.

43.     The foregoing wrongful acts and/or omissions of Defendant were a substantial factor in causing the Accident and injuries and damages to D.D.

44.     As a result of the foregoing, D.D. sustained significant disfigurement, permanent and disabling injuries including but not limited to the amputation of his right arm and right leg.

45.     As the natural mother of D.D. and as a result of the permanent injuries and damages to D.D., Plaintiff Tara Gagliardi has sustained loss of filial consortium with her natural son, including loss of society and affection. Plaintiff has further incurred damages related to D.D.'s medical care, future medical care, wages, earnings, earnings capacity and future necessary household help as well as services other than medical and expenses.

46.     As a further direct and proximate result of Defendant's negligence as referenced herein, Plaintiff has suffered, and will continue to suffer worry, sadness, and anguish in connection with his minor son D.D.'s injuries and has been deprived of and will continue to be deprived of care, affection, companionship, and enjoyment of life.

47.     As a further legal result of the aforesaid negligence and other wrongful acts, Plaintiff is entitled under 46 U.S.C. § 30911 to recover pre-judgement interest at the rate of four percent (4%) per annum on all damages awarded on this claim plus costs.

## III.

## PRAYER

WHEREFORE, Plaintiff prays for judgment, jointly and severally, against Defendant, as follows:

1.      That Plaintiff Tara Gagliardi may have judgment on her FIRST CLAIM FOR RELIEF against the United States of America, in the amount of $23,439,000.00, with $8,500,000.00 for her economic special damages on behalf of D.D. (including $4,200,000.00 for medical costs from ages 9-17; $2,375,000.00 for medical costs from 18 to life;

$1,800,000.00 for past medical expenses; $23,000.00 for a vocational rehabilitation counselor for college; and $41,000 for college expenses incurred from this Accident) and $15,000,000.00 for her non-economic general damages;

2.      That Plaintiff Tara Gagliardi may have judgment on her FIRST CLAIM FOR RELIEF for prejudgment interest at the rate of four percent (4%) per annum plus costs; and,

3.      That Plaintiff Tara Gagliardi be awarded such other and further relief as this Honorable Court deems just and proper.

## IV.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all claims for relief against Defendant United States of America.

Dated:   July 23, 2018

DEISS LAW PC

/s/ *Andrew Deiss*
Andrew Deiss
Wesley Feix

*Attorneys for Plaintiff Tara Gagliardi*